IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DORESSIA T. MCKEE<br>as Personal Representative of the<br>Estate of Freddie L. McKee,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF COLUMBIA MISSOURI, et. al.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 2:23-CV-04157-SRB |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Doressia McKee, as personal representative of the Estate of Freddie L. McKee, by and through undersigned counsel, and for her First Amended Complaint states and alleges as follows:

## PARTIES

1. Plaintiff Doressia McKee is an individual over the age of 18 and is a resident of the State of Missouri. Plaintiff is the natural mother of McKee Freddie McKee, who died on July 8, 2020.

2. Plaintiff also is the Personal Representative of the Estate of Freddie McKee (*In Re Estate of Freddie Lee McKee*, Case No. 20BA-PR00345, Circuit Court of Boone County, Missouri, Probate Division) and is thereby authorized to pursue claims on behalf of the Estate of Freddie McKee.

3. Defendant Steve Wilmoth (hereinafter "Defendant Wilmoth") was at all relevant times hereto a detective with the City of Columbia, Missouri Police Department. At all times relevant hereto, Defendant Wilmoth was acting in the course and scope of his employment with

the City of Columbia and was acting under the color of state law. Upon information and belief, Defendant Wilmoth resides in Boone County, Missouri.

4. At all relevant times, the City of Columbia (herein after the "City") was responsible for and had oversight of the City of Columbia Police Department (hereinafter the "Department") as well as the law enforcement officers, detectives and/or personnel who serve in and/or are employed by the Department including Defendant Wilmoth. The City of Columbia had the responsibility and non-delegable duty of managing the Department and its employees, agents and representatives including but not limited to the hiring, promoting, training, supervising, disciplining, and firing of employees, agents and representatives of the Department.

5. At all relevant times, Defendant Wilmoth was an employee and/or agent of the City of Columbia. Defendant Wilmoth was acting within the course and scope of his employment as a law enforcement officer with the City of Columbia, Missouri.

## JURISDICTION AND VENUE

6. Plaintiff brings this action, as personal representative of the Estate of Freddie McKee, due to the violation of his civil rights under 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourteenth Amendment to the United States Constitution as well as similar provisions of the Constitution of the State of Missouri and Missouri state law. Plaintiff states that Freddie McKee was denied equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

7. Jurisdiction is conferred by 28 U.S.C. §1343 which provides for original jurisdiction of this Court in any civil action to redress the deprivation under color of state law, statute or ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of

citizens and to recover damages under any Act of Congress providing for protection of civil rights. Plaintiff's actions for damages are authorized by 42 U.S.C. §1983, 42 U.S.C. §1988 and the Fourteenth Amendment to the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the events or omissions giving rise to Plaintiff's claims occurred in Columbia, Boone County, Missouri which is situated within the boundaries of the United States District Court for the Western District of Missouri.

## FACTUAL ALLEGATIONS

9. On the morning of July 8, 2020, Freddie McKee (hereinafter "McKee"), a black male, was found deceased outside of a residence located at 11 Switzler Avenue, Columbia, Missouri. At the time, Freddie McKee was thirty-eight (38) years old.

10. At the time of all alleged events, Freddie McKee's father, Freddie Gardner, resided at 11 Switzler Avenue, Columbia, Missouri (hereinafter the "Gardner Residence").

11. Freddie Gardner also is a black male. Doressia McKee, Freddie McKee's mother, is a black female.

12. On the night of July 7, 2020, McKee was staying with his father at the Gardener Residence. Normally, McKee resided with his mother, Plaintiff Doressia McKee, who also lives in Columbia Missouri. McKee would occasionally stay with his father, but not on a long-term basis.

13. The Gardner Residence is located in a low income, predominately black neighborhood in Columbia, Missouri commonly known as the Douglas Park neighborhood.

14. Upon information and belief, Defendant Wilmuth as a detective with the Department is familiar with the Douglas Park neighborhood in which the Gardner Residence is located including the fact that the neighborhood is predominately a black neighborhood.

15. Around 1:30 a.m. on July 8, 2020, Plaintiff received a text from her son which was ordinary and routine when he stayed with his father. The text did not indicate anything unusual was going on with McKee and raised no concern for Plaintiff. McKee also sent a text message to his uncle.

16. Around 2:45 a.m., an individual, who lived near 11 Switzler Avenue, contacted 911 to report that there was a black male, approximately 30 to 40 years of age, in her yard. The caller reported to the 911 operator that the man in her yard appeared to be searching for his phone and that his presence in her yard was causing her dogs to bark.

17. The caller did not and/or could not identify the individual in her yard but stated that he was a black male who matched McKee's description.

18. The neighbor who made the 911 call around 2:45 a.m. was a black female.

19. It is unclear what response, if any, the Columbia Police Department had to this 911 call. However, upon information and belief, after initially dispatching officers to the scene, the police did not have any further contact with the individual who contacted 911 after McKee was found deceased outside the Gardner Residence.

20. On the morning of July 8, 2020, Freddie Gardner contacted police to report that his son, Freddie McKee, was dead outside the Gardner Residence on or near the front porch.

21. Officers from the Department as well as the Columbia Fire Department arrived at the Gardner Residence.

22. When police and EMS personnel arrived, they found McKee covered with a blanket. McKee was laying on his back, face up and with his right arm up above his head. He was found with his jeans pulled down below his waist, no shirt, and with one shoe off and only one sock.

23. When the Columbia Police Department was contacted regarding McKee being dead at the Gardner Residence it was reported that he was located in an area near the steps. When police and EMS arrived, McKee's body was located near the wheelchair ramp. It is unknown whether the body was moved between the time it was discovered and when police and EMS arrived on the scene.

24. It was determined that Freddie McKee was deceased. The only thing found in his possession was a lighter.

25. There was no visible physical evidence at the scene or on McKe's body which indicated that McKee's death was drug related or that McKee had been exposed to or consumed drugs prior to his death. However, there were abrasions, wounds, cuts and contusions on McKee's body. The source of these injuries is unknown.

26. Plaintiff was contacted by Cortez Gardner, Freddie McKee's half-brother, and notified that Freddie McKee was deceased. Cortez Gardner lived at or stayed at the Gardner Residence on occasions.

27. After being notified of her son's death, Plaintiff immediately went to the Garnder Residence.

28. Sometime after Plaintiff arrived at the Gardner Residence and approximately an hour after police officers and EMS had arrived at the Gardner Residence, Defendant Wilmoth arrived on scene.

29. Defendant Wilmoth was the lead investigator/detective on the case for the Department.

30. After arriving on scene, Defendant Wilmoth began speaking with Freddie Gardner about the scene and McKee.

31. Upon information and belief, Columbia Police Department officers, specifically investigators Defendant Wilmoth and Investigator Jonathan Voss, only questioned Freddie Gardner at the scene. This conversation lasted approximately four minutes.

32. Once Defendant Wilmoth and other officers were done speaking with Freddie Gardner, Defendant Wilmoth began speaking with Plaintiff.

33. Plaintiff informed Defendant Wilmoth that Freddie Gardner had recently gotten a gun charge, was a known drug dealer, had conflict with her son at times, and that she had spoken with McKee earlier and he seemed normal.

34. Plaintiff also informed Defendant Wilmoth that Freddie McKee was not a drug user but did take a supplement about a month prior. Plaintiff further stated that she was not aware of him taking it again.

35. Upon information and belief, the only people Defendant Wilmoth spoke to on July 8, 2020, regarding the death of McKee were Freddie Garnder and Doressia McKee.

36. Upon information and belief, officers including Detective Wilmoth never searched the inside of the Gardner Residence and did not interview the individual who had contacted 911 earlier that morning.

37. Upon information and belief, police officers including Defendant Wilmuth knew or should have known that surveillance cameras were present at the Gardner Residence but did not attempt to collect any video as the officers were told that the cameras only live stream and do not

record. Upon information and belief, Defendant Wilmuth and the other police officers did not conduct any further investigation to ensure this statement was true.

38. Plaintiff was handed her son's wallet at the scene on July 8, 2020. Upon information and belief, Defendant Wilmoth did not question the individual who handed Plaintiff her son's wallet regarding where the wallet was found or how they came to possess the wallet.

39. Upon information and belief, McKee's death investigation was marked as inactive pending toxicology only a few days after McKee was found dead outside his father's house.

40. Upon information and belief, there was nothing that indicated McKee's cause of death other than McKee's father stating he believed "[McKee] was on something."

41. Upon information and belief, no other witness statements or investigation were conducted by Defendant Wilmoth until Plaintiff began contacting Defendant Wilmoth and complaining about the investigation.

42. When Plaintiff questioned Defendant Wilmoth about the investigation into her son's death, Defendant Wilmuth informed Plaintiff that it did not matter because "all black people were on drugs and not worthy of telling the truth."

43. Upon information and belief, McKee's phone was retrieved by the individual who had contacted 911 earlier in the morning on July 8, 2020. She located McKee's phone in her backyard and gave the phone to Plaintiff.

44. Upon information and belief, McKee's shoe also was retrieved from the individual's yard.

45. Upon information and belief, Defendant Wilmoth did not try to find or retrieve McKee's missing phone or shoe.

46. When Plaintiff advised Defendant Wilmoth that McKee's phone and shoe had been located, Defendant told Plaintiff that nobody cared who found the McKee, his shoes, or his phone as it did not change anything with the investigation.

47. Upon information and belief, Defendant Wilmoth did not reach out to the neighbor concerning the black male she allegedly saw around 2:45 a.m. until several weeks after McKee was found deceased and only after Plaintiff began contacting Defendant Wilmuth regarding the investigation.

48. On July 9, 2020, the medical examiner's office performed a post-mortem examination on McKee.

49. It was noted that McKee had abrasions on both of his elbows and his knees. It was also noted that he had abrasions on his scalp, shoulder, across his back, and that he had fingernails missing.

50. Upon information and belief, a toxicology report was received by the medical examiner a few days after McKee's death, but the first report did not show any of the tested drugs in the McKee's system.

51. Upon information and belief, the medical examiner and/or the Columbia Police Department requested additional toxicology testing for additional drugs.

52. Upon information and belief, on or around October 21, 2020, the medical examiner received the second toxicology report which allegedly reported that McKee had eutylone in his system.

53. Upon information and belief, McKee's death investigation was fully closed on or around October 21, 2020, listing his death as accidental overdose.

54. Upon information and belief, no investigation was done as to where McKee acquired the alleged eutylone.

55. There have been no arrests made in relation to McKee's death.

56. Upon information and belief, Defendant Wilmuth and/or the City of Columbia failed to investigate McKee's death because McKee was a black male and was found deceased in a predominately black neighborhood.

57. Upon information and belief, Defendant Wilmuth and/or Defendant City of Columbia have engaged in a custom, pattern, practice or policy of investigating deaths of white and/or non-minority individuals in a different manner than deaths of black or minority individuals. This failure to investigate is motivated by and/or caused in whole or in part by the race or ethnicity of the victim.

58. Plaintiff filed a complaint with the Citizen Police Review City for the City of Columbia, Missouri regarding the investigation conducted by Defendants. Plaintiff's complaint was sustained as the Citizen Police Review City found sufficient facts to establish misconduct.

59. An officer or police department's failure to investigate based upon the race or ethnicity of an individual violates the equal protection clause of the Fourteenth Amendment. *See Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2009)

### COUNT I – EQUAL PROTECTION VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 28 U.S.C. §1983
### (Defendant Wilmoth)

60. Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

61. The Fourteenth Amendment of the United States Constitution provides that no state shall make or enforce any law that denies any person within its jurisdiction the equal protection of the laws.

62. McKee had the clearly established right under 42 U.S.C. §1983 as well as the Fourteenth Amendment of the United States Constitution to be free from discrimination on the basis of race.

63. McKee was a black male.

64. Defendant Wilmoth is a Caucasian male.

65. Defendant Wilmoth was and is constitutionally required to conduct investigations without regard to the ethnicity or race of the victim.

66. Therefore, Defendant cannot treat an investigation differently on the basis of an individual's race or ethnicity. Defendant had a duty to treat and conduct all investigations as fair and equal regardless of the race or ethnicity of the victim of the crime.

67. Defendant failed to provide an unbiased and equal investigation into the death of Freddie McKee by:

    (a) Failing to interview or attempt to interview all relevant witnesses;

    (b) Failing to search the residence of 11 Switzler and the surrounding area where McKee was found;

    (c) failing to conduct timely interviews of neighbors;

    (d) Failing to investigate conflicting stories from various persons on the scene;

    (e) Failing to address Plaintiff's concerns about the location of McKee's items;

    (f) failing to properly examine the body of the McKee;

    (g) failing to take photographs or videos at the scene;

(h) Failing to properly identify the marks, abrasions, and injuries on McKee's body;

(i) Failing to investigate the cause of McKee's death;

(j) Failing to investigate any prior criminal history, reports of abuse, or drug use of Fredie Gardner;

(k) Failing to investigate where McKee would have allegedly acquired eutylone.

68. Upon information and belief, Defendant Wilmuth has engaged in a custom, pattern, practice or policy of investigating deaths of white and/or non-minority individuals in a different manner than deaths of black or minority individuals. This failure to investigate is motivated by and/or caused in whole or in part by the race or ethnicity of the victim.

69. Defendant Wilmoth took the foregoing actions due to McKee's race and Defendant intentionally failed to investigate McKee's death due to McKee's race.

70. Defendant Wilmoth's conduct as described above constitutes actions that shock the conscious under the Fourteenth Amendment of the United States Constitution and violated clearly established constitutional and statutory rights.

71. The conduct of Defendant Wilmoth was objectively unreasonable and demonstrates a deliberate indifference to McKee.

72. Defendant Wilmoth's failures were due to McKee's race, i.e., were motivated by an intent to discriminate, as evidence by, *inter alia*, Wilmoth's statement that "all black were on drugs and not worthy of telling the truth."

73. The conduct of Defendant Wilmoth as described above deprived McKee of his right to equal protection under the United States Constitution.

74. As a direct and proximate result of the unlawful conduct of Defendant Wilmoth, McKee's civil rights were violated.

75. The conduct of Defendant Wilmoth was motivated by evil motive or intent, was reckless, malicious, wanton, willful and violated Plaintiff's constitutional rights. An award of punitive damages is necessary to punish Defendant Wilmoth and to deter others from the same or similar transgression in the future.

**WHEREFORE,** Plaintiff requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT III - DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING AND SUPERVISION IN VIOLATION OF THE FOURTEENTH AMENDMENT
**(City of Columbia)**

76. Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 75 as though fully set forth herein.

77. The Fourteenth Amendment of the United States Constitution provides that no state shall make or enforce any law that denies any person within its jurisdiction the equal protection of the laws.

78. Defendant City had responsibility for the Department as well as for the individuals employed by the Department including Defendant Wilmoth. Defendant City had the responsibility and non-delegable duty of managing the Department and more specifically, the hiring, promoting, training, supervising, disciplining, and firing employees of the Department.

79. Defendant City had a duty to ensure that its employees, including Defendant Wilmoth, did not violate the constitutional rights of citizens of Columbia, Missouri.

80. McKee had the clearly established right under 42 U.S.C. §1983 as well as the Fourteenth Amendment of the United States Constitution to be free from discrimination on the basis of race.

81. Defendant City's agents and employees, including Defendant Wilmoth, are required to conduct investigations without regard to the ethnicity or race of the victim.

82. Therefore, Defendants cannot treat an investigation differently on the basis of an individual's race or ethnicity. Defendants have a duty to treat and conduct all investigations as fair and equal on the basis of race or ethnicity.

83. Upon information and belief, Defendant City engaged in a custom, pattern, practice or policy of investigating deaths of white and/or non-minority individuals in a different manner than deaths of black or minority individuals. This failure to investigate was motivated by and/or caused, in whole or in part, by the race or ethnicity of the victim.

84. The City is liable under 42 U.S.C. §1983 because the City's policies, customs and practices including the retention, training, discipline and supervision of law enforcement officers encourage and allowed those officers to violate the constitutional rights of Freddie McKee and demonstrates deliberate indifference to Freddie McKee's right to equal protection under the law.

85. All the acts or omissions of Defendant Wilmoth set forth in this Complaint took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders and customs of Defendant City. Defendant City is liable for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with Defendant City.

86. All of these acts or omissions took place under circumstances where Defendant City as well as Defendant Wilmoth are liable as governmental entities, employees and sworn law enforcement officers in the State of Missouri. Defendant City's liability is based upon allegations described in this Complaint all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this Complaint and to the rights of citizens, all of which led to deprivations of rights, privileges and immunities secured by the federal and states constitution as well as federal and state laws.

87. The City engaged in unlawful and unconstitutional policies, practices and customs, including but not limited to, the following:

    a. Violation and deprivation of constitutional rights as set forth in this Complaint;

    b. Inadequate training and instruction of employees on the proper use of police power, proper searches, and investigation of alleged crime in the State of Missouri;

    c. Inadequate supervision of employees as to the proper use of police power, proper searches and investigation of crime in the State of Missouri;

    d. Inadequate discipline of employees as to the proper use of police power, proper searches and investigation of crime in the State of Missouri;

    e. Inadequate supervision, training and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper searches, and investigation of alleged crime in the State of Missouri;

    f. Failure to take significant steps to prevent known risk of discrimination in the investigation of deaths by officers with the Department including but not limited to Defendant Wilmoth;

g. Failure to properly train officers regarding the investigation of potential homicides;

h. Failure to adopt and properly implement policies with regard to the investigation of potential homicides;

i. Deliberate indifference to and conscious disregard for the high risk that law enforcement officers would improperly use their influence as law enforcement officers and/or fail to protect against such improper influence in violation of Freddie McKee's rights; and,

j. Failure to take significant steps to prevent a known risk of failure to properly investigate the death based upon the race or ethnicity of the victim.

88. These actions, omissions, policies, practices, procedures, patterns, decisions, orders and customs of the City were the cause of constitutional and other violations described in this Complaint. These interrelated policies, practices and customs, separately and together, were implemented intentionally to deprive individuals including Freddie McKee of their constitutional rights or, at the very least, were implemented with recklessness or deliberate indifference to the rights of individuals and were a direct and proximate cause of the constitutional violations as set forth in this Complaint.

89. The City ratified and implemented, before and during the relevant period, each of the policies, practices, patterns of conduct and customs described herein. The City's custom/practice was so well settled as to constitute custom or usage with force of law, authorizing the improper consideration of a victim's race or ethnicity during a police investigation.

90. At the time of the events described in this Complaint, Freddie McKee had a clearly established constitutional right under the Fourteenth Amendment to equal protection of the law.

91. As a direct result of the City's conduct, Plaintiff, as personal representative of the Estate of Freddie McKee, is entitled to monetary relief for actual damages and is entitled to punitive damages as the actions were intentional and demonstrated a reckless disregard for human health, safety and deliberate indifference to Freddie McKee's constitutional rights.

**WHEREFORE,** Plaintiff requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues.

Respectfully submitted,

*/s/ Paeten E. Denning*
William P. Denning      MO# 52869
Paeten E. Denning      MO #72180
Denning Law Firm, LLC
8900 Indian Creek Parkway, Suite 210
Overland Park, Kansas 66210
Telephone: (816) 702-8400
Facsimile: (816) 702-8401
wdenning@denninglawfirm.com
pdenning@denninglawfirm.com
***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of May 2024, the foregoing was filed with the Clerk of the Court using the Western District of Missouri EM/ECF system, which will send notice of electronic filing to all counsel of record.

Brad C. Letterman
Ryan P. Thomas
Schreimann, Rackers & Francka, LLC
931 Wildwood Drive, Ste. 201
Jefferson City, Missouri 65109

573-634-7580
573-635-6034 (facsimile)
bcl@srfblaw.com
rpt@srfblaw.com
ATTORNEYS FOR DEFENDANTS


                                                      */s/ Paeten E. Denning*
                                                      Attorney for Plaintiff