# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

DORESSIA T. MCKEE in her (Individual Capacity )
and as Personal Representative of the    )
Estate of Freddie L. McKee,    )
   )
       Plaintiff,    )
   )     Case No: 2:23-CV-04157-SRB
   )
   v.    
   )
CITY OF COLUMBIA MISSOURI, et. al.,    )
   )
      Defendants    )

## PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND PETITION FOR DAMAGES

COMES NOW Plaintiff Doressia T. McKee, in her Individual Capacity) and as personal representative of the Estate of Freddie L. McKee, pursuant to Rule 15 of the Federal Rules of Civil Procedure and this Court's Scheduling Order [Doc. No. 24], hereby respectfully requests this Court to issue an Order allowing the Plaintiff to leave to file her First Amended Complaint in this matter. In further support of this motion, Plaintiff states:

1.     Plaintiff acting *pro se* originally filed this matter in state court on July 7, 2023.

2.     Plaintiff's state court petition pleaded various federal law and state law causes of action. Plaintiff pleaded these claims in both in her individual capacity and in her capacity as personal representative of the Estate of Freddie L. McKee.

3.     Plaintiff's federal law claims arose out of violations of Plaintiff's rights as well as Freddie L. McKee's rights under the Fourteenth Amendment of the United States Constitution against Defendants City of Columbia, Missouri, and Steve Wilmoth, and others. Wilmoth is a law enforcement officer employed by the City of Columbia, Missouri Police Department. All of

the claims asserted in the state court petition arose out of the investigation of Doressia Mckee and the death of Freddie McKee.

4.      Defendants timely filed their notice of removal on August 11, 2023 and this matter was removed to this Court.

5.      This Court entered its scheduling order on December 14, 2023 providing that any amendment to the pleadings was to occur by January 5, 2024.  At the time the scheduling order was entered, Plaintiff was still proceeding *pro se*.

6.      The parties subsequently jointly moved to amend the scheduling order on February 19, 2024.  [Doc. No. 23]

7.      On February 20, 2024 this Court amended its scheduling order.  [Doc. No. 24]  The scheduling order provided that any motion to amend the pleadings must be filed on or before May 1, 2024.

8.      Plaintiff now seeks leave to file her First Amended Petition and the Original Complaint, which is attached hereto as **Exhibit A**.

9.      Rule 15(a)(2), Fed. R. Civ. P. provides that "the court should freely give leave when justice so requires." *Buder v. Merrill Lynch, Pierce, Fenner & Smith*, 644 F.2d 690 (8th Cir. 1981).

10.     "Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. . . if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject to relief, he ought to be afforded an opportunity to test his claims on the merits." *Foman v. Davis*, 371 U.S. 178,172 (1962).

2

11.     "Unless there is a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted." *Becker v. University of Nebraska*, 191 F.3d 904, 907–08 (8th Cir. 1999).

12.     Plaintiff's request for leave to amend in no way prejudices Defendants.

13.     No depositions have occurred in this matter. Allowing Plaintiff leave to amend will not delay discovery, and Plaintiff's amendment will in no way cause any delay to a trial setting, as there is currently no trial setting.  Plaintiff's request is not made in bad faith, with dilatory motive, and only seeks to streamline the factual allegations asserted in the First Amended  Complaint. Therefore, Plaintiff in her (Individual Capacity) and as Personal Representative of the Estate of Freddie L. McKee,   should be allowed leave to amend her Complaint to include these facts.

WHEREFORE, for the reasons stated herein, Plaintiff Doressia T. McKee, in her Individual Capacity) and as personal representative of the Estate of Freddie L. McKee, respectfully prays that this Court issue an order allowing Plaintiff leave to amend her Complaint and for such other relief as the Court deems just and proper.

Respectfully submitted,

_____

Doressia Mckee
PO Box 6
Columbia Mo 65205
Telephone: 573 639 7613

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of August 2025, the foregoing was filed with the Clerk of the Court using the Western District of Missouri EM/ECF system.

_____PRO Se DORESSIA T MCKEE_____

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

DORESSIA T. MCKEE  in her (Individual Capacity )
and as Personal Representative of the               )
Estate of Freddie L. McKee,                              )

                                              )
                     Plaintiff,               )
                                              )     Case No: 2:23-CV-04157-SRB
                                              )
    v.

                                              )

**CITY OF COLUMBIA, MISSOURI,**
Serve: Mayor Barbara Buffaloe
701 E Broadway
Columbia MO 65205                          )

And                                                        )
                     Defendants           )
 **STEVEN WILMOTH** ( in his Individual
Capacity and Official Capacity)

Defendants

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Doressia McKee, (
hereinafter referred to as " Plaintiff ) and for her
Petition for damages against Defendants, states as
follows

## PARTIES

1.     Plaintiff  Doressia McKee is an individual over the age of 18 and is a resident of

the State of Missouri.  Plaintiff is the natural mother of  Freddie McKee, who died on July 8,

2020.

2.　　Plaintiff also in her (Individual Capacity ) and as the Personal Representative of the Estate of Freddie McKee (*In Re Estate of Freddie Lee McKee*, Case No. 20BA-PR00345, Circuit Court of Boone County, Missouri, Probate Division) and is thereby authorized to pursue claims on her behalf and of the Estate of Freddie McKee.

3.　　Defendant Steve Wilmoth and others, Matthew Gremore, Julie Ray, Neal Sedgwick, and Harlan Hatton (hereinafter "Defendant Wilmoth") was at all relevant times hereto detectives with the City of Columbia, Missouri Police Department.  At all times relevant to this matter, Defendants Wilmoth, Matthew Gremore, Julie Ray, Neal Sedgwick, and Harlan Hatton Ans others were acting within the course and scope of their employment with the City of Columbia and were acting under the color of state law.  Upon information and belief, Defendant Wilmoth resides in Boone County, Missouri.

4.　　At all relevant times, the City of Columbia and the City Manager De'Carlon Seawood  (herein after the "City") was responsible for and had oversight of the City of Columbia Police Department (hereinafter the "Department") as well as the law enforcement officers, detectives and/or personnel who serve in and/or are employed by the Department including Defendants Steven Wilmoth, Matthew Gremore, Julie Ray, Dylan Kelly, Harlon Hatton Neal Sedgwick and others. The City of Columbia had the responsibility and non-delegable duty of managing the Department and its employees, agents, and representatives, including but not limited to the hiring, promoting, training, supervising, disciplining, and firing of employees, agents, and representatives of the Department.

5.　　At all relevant times, Defendants Steven Wilmoth, Matthew Gremore, Julie Ray, Dylan Kelly, and Harlon Hatton Neal Sedgwick were employees and/or agents of the City of Columbia.  Defendants Steven Wilmoth, Matthew Gremore, Julie Ray, Dylan Kelly, Harlon

Hatton, Neal Sedgwick, Dylan Kelly and others were acting within the course and scope of their employment as law enforcement officers with the City of Columbia, Missouri.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action, in her Individual Capacity and as personal representative of the Estate of Freddie McKee, due to the violation of his civil rights under 42 U.S.C. §1983, 42 U.S.C. §1988, the

Fourteenth Amendment to the United States Constitution as well as similar provisions of the Constitution of the State of Missouri and Missouri state law.  Plaintiff states in her Individual Capacity and as personal representative that she and Freddie McKee were denied equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

7.      Jurisdiction is conferred by 28 U.S.C. §1343 which provides for original jurisdiction of this Court in any civil action to redress the deprivation under color of state law, statute or ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens and to recover damages under any Act of Congress providing for protection of civil rights.

Plaintiff's actions for damages are authorized by 42 U.S.C. §1983, 42 U.S.C. §1988 and the Fourteenth Amendment to the United States Constitution.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the events or omissions giving rise to Plaintiff's claims occurred in Columbia, Boone County, Missouri which is situated within the boundaries of the United States District Court for the Western District of Missouri.

## FACTUAL ALLEGATIONS

9.      On the morning of July 8, 2020, Freddie McKee (hereinafter "McKee"), a black male, was found deceased outside of a residence located at 11 Switzler Avenue, Columbia, Missouri.  At the time, Freddie McKee was thirty-eight (38) years old.

10.      At the time of all alleged events, Freddie McKee's father, Freddie Gardner, resided at 11 Switzler Avenue, Columbia, Missouri (hereinafter the "Gardner Residence").

11.      Freddie Gardner also is a black male.  Doressia McKee, Freddie McKee's mother, is a black female.

12.      On the night of July 7, 2020, and prior to July 7, 2020 McKee was staying with his father at the Gardner Residence.  Normally, McKee resided with his mother, Plaintiff Doressia McKee, who also lives in Columbia Missouri.  McKee would occasionally stay with his father, but not on a long-term basis.

13.      The Gardner Residence is located in a low-income, predominately black neighborhood in Columbia, Missouri, commonly known as the Douglas Park neighborhood.

14.      Upon information and belief, Defendants Steven Wilmuth, Matthew Gremore, Neal Sedgwick, Harlon Hatton, and Julie Ray, as detectives with the Department, are familiar with the Douglas Park neighborhood in which the Gardner Residence is located, including the fact that the neighborhood is predominantly a black neighborhood.

15.      Around 1:30 a.m. on July 8, 2020, Plaintiff received a text from her son which was ordinary and routine when he stayed with his father, and Edward Mckee the uncle also received a text message from Freddie Mckee around 1:45.  The text did not indicate anything unusual was going on with McKee and raised no concern for Plaintiff or his uncle.  Around 2:45 a.m., an individual who lived near 11 Switzler Avenue contacted 911 to report that there was a black male,

approximately 30 to 40 years of age, in her yard. The caller reported to the 911 operator that the man in her yard appeared to be searching for his phone and that his presence in her yard was causing her dogs to bark.

16.     The caller did not and/or could not identify the individual in her yard but stated that he was a black male who matched McKee's description.

17.     The neighbor who made the 911 call around 2:45 a.m. was a black female.

18.     It is unclear what response, if any, the Columbia Police Department had to this 911 call. However, upon information and belief, after initially dispatching officers to the scene, the police did not have any further contact with the individual who contacted 911. The caller noted that police had not yet arrived. After Mckee was found deceased outside on the steps/ramp of Freddie Gardner's house. Defendants Steven Wilmuth, Matthew Gremore, Neal Sedgwick, Harlon Hatton, Julie Ray, Chief Jones, DeShawn Seawood, and others all denied that there was ever a 911 call made. Three years later, evidence was uncovered and released to the Plaintiff by Joint Communications Deputy Director Joe Piper and Chad Martin of the 911 call, naming the supervisor at the Columbia Police who was responsible for rendering 911 service. Joint Communications released the report that showed Matthew Gremore to be the supervisor who used his badge number in the report to hide his identity, for 3 years, Matthew Gremore stating that he knew nothing about Freddie McKee's death investigation or the 911 call. In the Joint Communications report, Matthew Gremore ordered the call to be held until 3:45 am; by that time, Freddie Mckee was dead. The police Dept is less than 5 minutes away from 11 Switzer Ave, where Freddie Mckee was found dead outside the Gardner Residence. Defendants Steven Wilmuth, Matthew Gremore, Neal Sedgwick, Harlon Hatton, Julie Ray, Chief Jones, DeShawn Seawood, and others all denied that there was ever a 911 call made

19.     On the morning of July 8, 2020, Freddie Gardner contacted police to report that his son, Freddie McKee, was dead outside the Gardner Residence on the front porch.

20.     Officers from the Department, as well as the Columbia Fire Department arrived at the Gardner Residence.

21.     When police and EMS personnel arrived, they found McKee covered with a blanket.  McKee was laying on his back, face up, and with his right arm up above his head.  He was found with his jeans pulled down below his waist, no shirt, and with one shoe off and only one sock, with his wallet missing, and money missing.

22.     When the Columbia Police Department was contacted regarding McKee being dead at the Gardner Residence, it was reported that he was located on the steps.  When police and EMS arrived, McKee's body was located near the wheelchair ramp.  It is unknown whether the body was moved between the time it was discovered and when police and EMS arrived on the scene.  Freddie McKee's body had rock dust on it from a gravel driveway,

23.     It was determined that Freddie McKee was deceased.  The only thing found in his possession was a lighter.

24.     There was physical evidence of trauma, including significant injury on July 8, 2020 based on the autopsy and the medical opinion from Dr Stacy, the Boone County medical examiner. Defendants Steven Wilmuth, Matthew Gremore, Neal Sedgwick, Harlon Hatton, Julie Ray, Chief Jones, and DeShawn Seawood, stated no visible physical evidence at the scene or on McKee's body, which police immediately indicated within 10 minutes of arriving stated that McKee's death was drug related, never asking one neighbor if they heard anything saw anything or knew anyone, including the 911 caller.  Defendants Steven Wilmuth, Matthew Gremore, Neal Sedgwick, Harlon

Hatton, Julie Ray, Chief Jones, and DeShawn Seawood. However, there were abrasions, wounds, cuts, contusions, including significant injuries on McKee's body.

25. Plaintiff was contacted by Cortez Gardner, Freddie McKee's half-brother, and notified that Freddie McKee was deceased. Cortez Gardner lived at or stayed at the Gardner Residence on July 8, 2020. The plaintiff never received a call from Freddie Gardner or Columbia police, or the Boone County medical examiner's office.

26. After being notified of her son's death, Plaintiff immediately went to the Gardner Residence.

27. Sometime after Plaintiff arrived at the Gardner Residence, police officers and EMS arrived at the Gardner Residence, and Defendant Wilmoth arrived on scene.

28. Defendants Steven Wilmuth, Matthew Gremore, Neal Sedgwick, Harlon Hatton, Julie Ray, and others were the lead investigators/detectives on the case.

29. After arriving on the scene, Defendant Wilmoth began speaking with Freddie Gardner. Wilmoth decided that Gardner would be the only person he would interview.

30. Columbia Police Department officers, specifically investigators Defendant Wilmoth and Investigator Jonathan Voss, Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, only questioned one person, Freddie Gardner at the scene. This conversation was quick and lasted approximately four minutes or less.

31. Once Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray, and others were done speaking with Freddie Gardner, Defendant Wilmoth began speaking with the Plaintiff.

32. The plaintiff informed Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray that Freddie Gardner had recently gotten a gun charge, including a was a well-known drug dealer, had conflict with her son at times that caused an ER

visit for a Fractured jaw, a first degree assault charged for beating up his sister and was arrested and placed on probation.

33.     The Plaintiff also informed Defendant Wilmoth that Freddie McKee was not a drug user but did smoke marijuana, because he had received a positive urine test from a probation officer. Freddie Gardner stated in a recording that Viss recorded during questioning Gardner stated that Freddie Mckee was taking a supplement about a month prior. Gardner further stated that he was not aware of him taking it again or any drug history or any drug addiction that he had, other than Marijuana.

34.     Upon information and belief, the only people Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray spoke to on July

8, 2020, regarding the death of McKee was Freddie Gardner, Doressia Mckee, and Sherron Mckee.

35.     Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray refused to search the inside of the Gardner Residence and refused to interview the individual who had contacted 911 earlier that morning at 2:45am.

36.     Officers including Defendants Wilmuth Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray De Shawn Seawood knew or should have known that surveillance cameras were present at the Gardner Residence but did not attempt to collect any video as the officers were told that the cameras only live stream and do not record. Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray, and the other police officers did not conduct any further investigation to ensure this statement was true. The Plaintiff knew that Gardner's cameras did in fact record

37.     Plaintiff was handed her son's wallet at the scene on July 8, 2020, by her daughter Sherron Mckee, in front of Defendant Wilmouth who informed Defendant Wilmouth as he stood

in front of Sherron McKee and Plaintiff. Defendant Wilmoth did not question Sherron Mckee, the individual who handed Plaintiff her brother Freddie McKee's wallet. Sherron Mckee told Defendant Steven Wilmoth where the wallet was found, who gave her the wallet, and how she came to possess the wallet. Sherron Mckee told Defendant Wilmoth who gave her the wallet, and that Detective Voss witnessed the person" Freddie Gardner" who gave her the wallet. Sherron Mckee witnessed Defendant Wilmoth asking to see the wallet and then go over to where Voss was interviewing Freddie Gardner, never returning the wallet. And never putting the wallet into evidence. Defendant Wilmoth stated Freddie Mckee buried his wallet, Defendant Wilmot Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray refusing to investigate how Freddie Gardmer found the wallet after Defendant Wilmoth stated that Freddie McKee buried the wallet

38.     McKee's death investigation was marked as inactive, closed pending toxicology, within 10 minutes upon Defendant Steven Wilmoth's arrival, on scene. Defendant Steven Wilmouth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray spoke refused to preserve, collect, or protect the scene or any evidence.

39.     Defendants Steven Wilmuth, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray, including DeShawn Seawood, knew or should have known that evidence showed Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray De Shawn Seawood known that there were other factors and evidence that strongly indicated McKee's cause of death was more likely to be a homicide. other. than McKee's father stating he believed "[McKee] was on something."

40.     Defendants Steven Wilmuth, Matthew Gremore showed that Matthew Gremore there were   no other witness statements no other investigation were conducted by Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray De Shawn

Seawood known until Plaintiff began contacting Defendant Wilmuth and complaining about the investigation.

41.     When Plaintiff and others questioned Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray De Shawn Seawood about the investigation into her son's death, Defendant Wilmuth informed Plaintiff and others that it did not matter because and his reason for not interviewing any neighbors Defendant Steven Wilmoth stated "all black people" the people were on drugs and not "worthy" would not tell the truth they would just lie."

42.     McKee's phone was retrieved by the individual who had contacted 911 earlier at 2:45am on July 8, 2020. She located McKee's phone in her backyard and gave the phone to Plaintiff. The 911 caller lives two houses away from where Mckee was found dead.

43.     Defendant Wilmoth refused to collect evidence that McKee's shoe was also retrieved from the individual's yard who called 911 at 245am on July 8, 2020 days after as if it was placed there.

44.     Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray refused to collect or retrieve McKee's missing phone, shoe, money, hat, shirt.

45.     When Plaintiff advised Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray that McKee's phone and shoe had been located, Defendant told Plaintiff and others, " Edward Mckee and Shameka -Windsor, that it did not matter and he did not care that the missing items were not important and had nothing to do with his death. the McKee, his shoes, or his phone, as it did not change anything in the investigation.

46.     Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray did not reach out to ONE neighbor concerning the black male she saw around 2:45 a.m and again between 3 am and 3 30am alive . until several weeks after McKee was found deceased and only after Plaintiff and Helen Jackman requested to meet with Harlan Hatton to file

a complaint regarding Defendant Steven Wilmoth prejudice, biased and blatant discriminatory words action and behavior he showed and used towards black people including the plaintiff during McKees death investigation.

47.     On July 9, 2020, the medical examiner's office performed a post-mortem examination on McKee. And sent Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray a copy of the autopsy that stated injuries that warranted a full investigation Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray and others denied the evidence from the medical examiner.

48.     It was noted that McKee had abrasions on both of his elbows and his knees. It was also noted that he had significant injuries, wounds contusions to his body on his scalp, shoulder, and across his back, and that he had a missing fingernail, his pants the front knee area where the pants were purchased with holes already in them were full of rock dust as if he had been pulled or dragged in a gravel rocky driveway or road. Defendants Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray and others at the Columbia Police Dept refused to turn the case over to the Boone County Prosecutor's office for their vetting review

49.     The autopsy was completed on July 9th 2020, and that report was sent to Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, showing that Mckee had significant injuries to his body that warranted a proper, lawful, and justifiable investigation. The toxicology report was received by the medical examiner after McKee's death, but the first report did not show any of the tested drugs in McKee's system.

50.     The Columbia Police Department requested additional toxicology testing for additional drugs, without the plaintiff's knowledge of further testing needed, without the mother's knowledge or consent.

51.     On October 21, 2020, the medical examiner received the second toxicology report, which allegedly reported that McKee had eutylone in his system. There has been another Forensic Toxicology Expert, Okorie Okorocha, who is nationally board certified as both civil & criminal expert, who has looked at the reports from the police and the medical examiner and found that the testing is not reliable and has some very serious legal issues.

52.     McKee's death investigation was fully closed and marked immediately as inactive on July 8, 2020. On October 21, 2020, listing his death as an accidental overdose.    No investigation was carried out as to where McKee.

Acquired the alleged eutylone, or how the significant injuries, wounds, and trauma to the body occurred

53.     There have been no investigations or arrests made in relation to McKee's death.

54.     Upon information and belief, evidence will show Defendant Wilmuth and Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray and others at the City of Columbia police, including the city Manager failed to investigate McKee's death because McKee was a black male and was found deceased in a predominately black neighborhood, in a well well-known drug house.

55.     Defendant Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray and other Employees/Defendant at the City of Columbia have engaged in a custom, pattern, practice and policy of investigating deaths of white and/or non-minority individuals in a different manner than deaths of black or minority individuals.  Evidence that failure to investigate is motivated by and/or caused in whole or in part by the race or ethnicity of the victim. Evidence based on the facts from Freddie Mckee death investigation, and the number of black deaths still unsolved.

56.     The plaintiff hired a law firm out of St Charles, Missouri and filed a complaint with the Citizen Police Review Board for the City of Columbia, Missouri, which agreed to take on the Plaintiff's complaint regarding conduct and racist allegations during the investigation by the Defendants.  The Plaintiff won her appeal.  Complaint was sustained as the Citizen Police Review Board found unanimously that there were sufficient facts and evidence that established misconduct by Steven Wilmoth .

57.     An officer or police department's failure to investigate based upon the race or ethnicity of an individual violates the equal protection clause of the Fourteenth Amendment.  *See Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2009)

### COUNT I – EQUAL PROTECTION VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION  PURSUANT TO 28 U.S.C. §1983 (Defendant Wilmoth) Matthew Gremore, Julie Ray, Harlan Hatton, Dylan Kelly

58.     Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

59.     The Fourteenth Amendment of the United States Constitution provides that no state shall make or enforce any law that denies any person within its jurisdiction the equal protection of the laws.  That no person be denied medical treatment or denied emergency services, intentionally delaying medical services

60.     Plaintiff  McKee had established rights under 42 U.S.C. §1983 as well as the Fourteenth Amendment of the United States Constitution to be free from discrimination based on race.

61.     McKee was a black male. The plaintiff is a Black female

62.     Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray are Caucasian.

63.     Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray were and are constitutionally required to conduct investigations without regard to the ethnicity or race of the victim.

64.     Therefore, Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray cannot treat an investigation differently based on an individual's race or ethnicity. Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray had a duty to treat and conduct all investigations fair and equally, regardless of the race or ethnicity of the victim of the crime.

65.     Defendants Steven Wilmuth, Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others failed to provide an unbiased and equal investigation into the death of

Freddie McKee by:

  a Failing to interview or attempt to interview all relevant witnesses, and neighbors.

  b Failing to search the residence of 11 Switzler and the surrounding area where McKee was found.

  c failing to conduct timely interviews with neighbors.

  d Failing to investigate conflicting stories from various persons on the scene.

  e Failing to address Plaintiff's concerns about the location of McKee's items.

  f failing to properly examine the body of McKee;

  g failing to take photographs or videos at the scene.
  h Failing to properly identify the marks, abrasions, and injuries on McKee's body;

  i Failing to investigate the cause of McKee's death;

  j Failing to investigate any prior criminal history, reports of abuse, or drug use of Freddie Gardner;

        k    Failing to investigate where McKee would have allegedly acquired eutylone.

        l    Failing to investigate the 911 call

        m   Failing to investigate the one-hour delay in emergency services

        n    Failure to investigate why Matthew Gremore ordered the call to be put on hold for one hour until Mckee was dead.

66.    Failure to investigate why Defendants Steven Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray, and others denied ever having knowledge of the 911 call, Defendant Wilmoth stating the 911 caller lied about the 911 call.

67.    Upon information and belief, Defendant Wilmuth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others engaged in a custom, pattern, practice and policy of investigating deaths of white and/or non-minority individuals in a different manner than deaths of black or minority individuals. This failure to investigate is motivated by and/or caused in whole or in part by the race or ethnicity of the victim.

68.    Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others failed took the foregoing actions due to McKee's race and Defendants intentionally failed to investigate McKee's death due to McKee's race.

69.    Defendant Wilmoth's Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others failed conduct as described above constitutes actions that shock the conscious under the Fourteenth Amendment of the United States Constitution and violated clearly established constitutional and statutory rights.

70.    The conduct of Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others was objectively unreasonable and demonstrates a deliberate indifference to Freddie McKee and Doressia Mckee.

71.    Defendant Wilmoth's Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others failed failures were due to McKee's race, i.e., were motivated by an intent to

harm discriminate, as evidence by, *inter alia*, Wilmoth's statement that "all black were on drugs and not worthy of telling the truth."

72.     The conduct of Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others as described above deprived both Freddie McKee & Doressia Mckee of his & her right to equal protection under the United States Constitution.

73.     As a direct and proximate result of the unlawful conduct of Defendant Wilmoth, McKee's civil rights were violated.

74.     The conduct of Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others was motivated by evil motive or intent, was reckless, malicious, wanton, willful, and violated Plaintiff's constitutional rights.  An award of punitive damages is necessary to punish Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others, and to deter others from the same or similar transgression in the future.

**WHEREFORE,** Plaintiff requests judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT III - DELIBERATELY INDIFFERENT POLICIES, MEDICAL TREATMENT MEDICAL PRACTICES, CUSTOMS, TRAINING AND SUPERVISION IN VIOLATION OF  THE FOURTEENTH AMENDMENT
**(City of Columbia)**

76.     Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 75 as though fully set forth herein.

77.     The Fourteenth Amendment of the United States Constitution provides that no state shall make or enforce any law that denies or deprives any person within its jurisdiction the equal protection of the laws.

78.     Defendant City had responsibility for the Department as well as for the individuals employed by the Department, including Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others.  Defendants City had the responsibility and non-delegable duty of managing the Department and, more specifically, the hiring, promoting, training, supervising, disciplining, and firing employees of the Department.

79.     Defendant City had a duty to ensure that its employees, including Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray, and others did not violate the constitutional rights of citizens of Columbia, Missouri.

80.     Freddie McKee and Doressia Mckee had the established right under 42 U.S.C. §1983 as well as the Fourteenth Amendment of the United States Constitution to be free from discrimination on the basis of race.

81.     Defendant City's agents and employees, including Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others, are required to conduct investigations without regard to the ethnicity or race of the victim.

82.     Therefore, Defendants cannot treat an investigation differently on the basis of an individual's race or ethnicity.  Defendants have a duty to treat and conduct all investigations as fair and equal on the basis of race or ethnicity.

83.     Upon information and belief, Defendant City engaged in a custom, pattern, practice or policy of investigating deaths of white and/or non-minority individuals in a different manner than deaths of black or minority individuals.  This failure to investigate was motivated by and/or caused, in whole or in part, by the race or ethnicity of the victim.

84.     The City is liable under 42 U.S.C. §1983 because the City's policies, customs and practices including the retention, training, discipline and supervision of law enforcement officers encourage and allowed those officers to violate the constitutional rights of  Doressia Mckee and Freddie McKee and demonstrates deliberate indifference to Doressia Mckee and Freddie McKee's right to equal protection under the law.

85.     All the acts or omissions of Defendant Wilmot Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others are set forth in this Complaint took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders and customs of Defendant City.   Defendant City is liable for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with Defendant City.

86.     All of these acts or omissions took place under circumstances where Defendant City as well as Defendant Wilmoth Gremore, Voss, Neal Sedgwick, Harlon Hatton, and Julie Ray, and others are are liable as governmental entities, employees and sworn law enforcement officers in the State of Missouri.  Defendant City's liability is based upon allegations described in this Complaint all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this Complaint and to the rights of citizens, all of which led to deprivations of rights, privileges and immunities secured by the federal and states constitution as well as federal and state laws.

87.     The City engaged in unlawful and unconstitutional policies, practices and customs, including but not limited to, the following:

a.  Violation and deprivation of constitutional rights as set forth in this Complaint.

b.  Inadequate training and instruction of employees on the proper use of police power, proper searches, and investigation of alleged crime in the State of Missouri.

c.  Inadequate supervision of employees as to the proper use of police power, proper searches, and investigation of crime in the State of Missouri;

d.  Inadequate discipline of employees as to the proper use of police power, proper searches, and investigation of crime in the State of Missouri.

e.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper searches, and investigation of alleged crime in the State of Missouri;

f.  Failure to take significant steps to prevent known risk of discrimination in the investigation of deaths by officers with the Department, including but not limited to Defendant Wilmoth Matthew Gremore, Voss, Neal Sedgwick, Harlon Hatton, Julie Ray, and others;

g.  Failure to properly train officers regarding the investigation of potential homicides.

h.  Failure to adopt and properly implement policies with regard to the investigation of potential homicides.

i.  Deliberate indifference to and conscious disregard for the high risk that law enforcement officers would improperly use their influence as law enforcement officers and/or fail to protect against such improper influence in violation of Doressia Mckee and Freddie McKee's rights; and,

> j. Failure to take significant steps to prevent a known risk of failure to properly investigate the death based upon the race or ethnicity of the victim.

88.     These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs of the City were the cause of constitutional and other violations described in this Complaint.  These interrelated policies, practices and customs, separately and together, were implemented intentionally to deprive individuals including Doressia Mckee and Freddie McKee of their constitutional rights or, at the very least, were implemented with recklessness or deliberate indifference to the rights of individuals and were a direct and proximate cause of the constitutional violations set forth in this Complaint.

89.     The City ratified and implemented, before and during the relevant period, each of the policies, practices, patterns of conduct, and customs described herein.  The City's custom/practice was so well settled as to constitute custom or usage with the force of law, authorizing the improper consideration of a victim's race or ethnicity during a police investigation.

90.     At the time of the events described in this Complaint, Doressia Mckee Freddie McKee had established a constitutional right under the Fourteenth Amendment to equal protection of the law.

91.     As a direct result of the City's conduct, Plaintiff, as personal representative of the Estate of Freddie McKee, is entitled to monetary relief for actual damages and is entitled to punitive damages as the actions were intentional and demonstrated a reckless disregard for human health, safety, and deliberate indifference to Doressia Mckee Freddie McKee's constitutional rights.

92.     **WHEREFORE,** Plaintiff requests judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues.

Respectfully submitted,

*Doressia Mckee Pro SE* .
P.O. Box #6
Columbia Mo 65205
Telephone 573 636 7613
Dmckee3601@gmailmcom93enning

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August 2025, the foregoing was filed with the Clerk of the Court using the Western District of Missouri EM/ECF system, which will send notice of electronic filing to all counsel of record.

Brad C. Letterman
Ryan P. Thomas
Schreimann, Rackers & Francka, LLC
931 Wildwood Drive, Ste. 201
Jefferson City, Missouri 65109
573-634-7580
573-635-6034 (facsimile)  bcl@srfblaw.com
rpt@srfblaw.com
ATTORNEYS FOR DEFENDANTS